UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DIGITAL REVOLUTION MEDIA CENTER, LLC, | Case No. 24-cv-06234-LB |
| Plaintiff, | **ORDER DENYING MOTION TO REMAND CASE** |
| v. | Re: ECF No. 11 |
| SENTINEL INSURANCE COMPANY, LTD., | |
| Defendant. | |

**INTRODUCTION**

This case is about a disputed insurance claim. Digital Revolution Media Center, LLC, bought a policy from Sentinel Insurance Company, Ltd., that covered certain losses of its business property. While Digital Revolution was moving to a new office, someone stole a U-Haul truck containing its equipment, including equipment for digitizing and duplicating analog media. Digital submitted a claim to Sentinel for $69,309.12, the replacement value of the equipment. Sentinel paid $9,654.50, calculating a different replacement value and depreciating the property.[1] Digital sued Sentinel in

---

[1] First Am. Compl. (FAC), Ex. 2 to Notice of Removal – ECF No. 1-2 at 3–5 (¶¶ 7–12). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

state court, and Sentinel removed the case to federal court, asserting diversity jurisdiction.[2] Digital moved to remand on the ground that the amount in controversy does not exceed $75,000.[3] Because Sentinel has proven the amount in controversy by a preponderance of the evidence, the court denies the motion.

## STATEMENT

Digital Revolution duplicates and digitizes analog media, like films and magnetic tapes. This requires machines capable of playing dozens of formats.[4] In June 2023, Digital purchased an insurance policy for its equipment from Sentinel.[5] In September 2023, while Digital was moving to a new office in San Francisco, someone stole a U-Haul with its equipment.[6] It submitted a claim to Sentinel for $69,309.12, the replacement value of the equipment, and submitted photographs and a sales quote to support the claim.[7] Sentinel paid $9,654.80 based on a $250 deductible, a replacement value of $37,585.17 (by pricing the equipment at "basic" versions, not the professional-level equipment that Digital actually used), and depreciating the property by $27,680.67 based on the age of the equipment.[8] The difference between the amount claimed and the amount paid thus is $59,404.

Digital contacted Sentinel multiple times to demand the policy limit. Sentinel delayed in responding, refused to further investigate the claim, instead referred to the equipment as "obsolete," and disparaged Digital.[9] Digital thus incurred attorney's fees, was unable to replace the equipment, and lost work and income.[10]

Digital sued Sentinel in state court for breach of contract and breach of the covenant of good

---

[2] Notice of Removal – ECF No. 1 at 1 (¶ 1).
[3] Mot. – ECF No. 11.
[4] FAC, Ex. 2 to Notice of Removal – ECF No. 1-2 at 4 (¶ 10).
[5] *Id.* at 3 (¶ 7).
[6] *Id.* at 4 (¶ 10).
[7] *Id.* (¶ 11).
[8] *Id.* at 5 (¶ 12).
[9] *Id.* (¶ 13).
[10] *Id.* (¶ 15).

faith and fair dealing.[11] It asks for general damages, punitive damages, attorney's fees, and costs of the lawsuit.[12] Its claim for punitive damages is based on Sentinel's allegedly oppressive, fraudulent, and malicious conduct.[13]

Sentinel removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332(a)(1).[14] In its notice of removal, it asserts that for the contested issue of punitive damages, a conservative multiplier of 1x means that at least $59,404 in punitive damages are in controversy, for a total of $118,808.[15] In its opposition — based on the claim for breach of the implied covenant of good faith and fair dealing and the resulting damages of attorney's fees, the inability to replace equipment, and the resulting loss of work and income — Sentinel's declarant, who has forty-plus years of experience litigating insurance bad-faith disputes, estimated the plaintiff's fees through summary judgment. Public-record billing submissions establish that about six years ago, lead counsel — a principal of a "well-regarded policyholder firm" — billed clients $900 an hour, and his associates billed $450. Using those rates, the parties' correspondence in the claims files, and estimates of hours of work with partner/associate splits, Sentinel estimated the following fees:[16]

| Activity | Hours | Rate | Fees |
|---|---|---|---|
| Initial Correspondence with Sentinel (reflected in the claims file) | 4 | $900 | $3,600 |
| Draft Complaint | 1 | $900 | $900 |
|  | 1 | $450 | $450 |
| Draft Motion to Remand | 4 | $450 | $1,800 |
| Draft Reply | 3 | $450 | $1,350 |
| Rule 26 Meeting | 1.5 | $900 | $1,350 |

---

[11] Compl., Ex. 1 to Notice of Removal – ECF No. 1-1; FAC, Ex. 2 to *id.* – ECF No. 1-2.
[12] FAC, Ex. 2 to *id.* – ECF No. 1-2 at 7 (Prayer for Relief).
[13] *Id.* at 5 (¶ 16).
[14] Notice of Removal – ECF No. 1 at 1 (¶ 1).
[15] *Id.* at 2 (¶ 5).
[16] Opp'n – ECF No. 12 at 2–6 (citing FAC, Ex. 2 to Notice of Removal – ECF No. 1-2 at 5 (¶ 15)); Downs Decl. – ECF No. 12-1 at 2–3 (¶¶ 3–4).

ORDER – No. 24-cv-06234-LB                          3

| | | | |
|---|---|---|---|
| Draft Joint Case-Management Statement | 2 | $450 | $900 |
| Hearing on Motion to Remand | 1 | $900 | $900 |
| Appearance at Initial Case-Management Conference | 1 | $900 | $900 |
| Draft Initial Disclosures; Produce Discovery | 5 | $450 | $2,250 |
| Defend Deposition of Plaintiff's Principal, Including Preparation | 10 | $900 | $9,000 |
| Depose Two Defense Witnesses, Including Preparation | 10 | $900 | $9,000 |
| Oppose Summary-Judgment Motion | 3 | $900 | $2,700 |
| | 12 | $450 | $5,400 |
| Summary-Judgment Hearing | 1 | $900 | $900 |
| **Total** | 60 | | $41,400 |

For punitive damages, Sentinel searched for verdicts (excluding health-insurance and disability verdicts) and located one verdict from 2016 — *Mazik v. Geico General Insurance Co.* — where the ratio of punitive damages to compensatory damages was 3.33:1.[17] It searched Westlaw for federal trial or appellate decisions and California appellate decisions and located two decisions in a similar time period: *Borjon Auto Center King City, Inc. v. Sentry Select Insurance Co.*, 2023 WL 3734982 (Cal. App. May 31, 2023) (ratio 3.99:1) and *Victaulic Co. v. American Home Assurance Co.*, 80 Cal. App. 5th 485, 490–91,496 (2022) (5:57:1, reversed on appeal).[18]

Digital Revolution moved to remand the case to state court based on Sentinel's alleged failure to satisfy the amount in controversy.[19] The parties consented to magistrate-judge jurisdiction.[20] 28 U.S.C. § 636(c). The court held a hearing on December 5, 2024.

---

[17] Downs Decl. – ECF No. 12-1 at 3 (¶ 6) & Ex. 6 to *id.* – ECF No. 12-7 (head-on collision with uninsured driver; GEICO disputed the amount of plaintiff's claimed injuries); Def.'s Suppl. Br. – ECF No. 20 at 1.

[18] *Id.* (¶ 7) (says that *Borjon* was reversed too, but the Court of Appeal affirmed).

[19] Mot. – ECF No. 12.

[20] Consents – ECF Nos. 9–10.

## ANALYSIS

A defendant may remove a case to federal court if the plaintiff could have filed the case here, meaning, if the court has federal-question or diversity jurisdiction. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Because district courts are courts of limited jurisdiction, courts construe the removal statute strictly and reject federal jurisdiction if there is any doubt as to the right of removal. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The removing party has the burden of establishing the court's jurisdiction. *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The basis for removal here is diversity jurisdiction. For diversity jurisdiction, the amount in controversy must "exceed[] the sum or value of $75,000, exclusive of interest and costs," and there must be complete diversity of citizenship between opposing parties. 28 U.S.C. § 1332(a)(1); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The parties dispute only whether the amount-in-controversy requirement has been satisfied.

"The amount in controversy includes claims for general and special damages (excluding costs and interests), attorney's fees if recoverable by statute or contract, and punitive damages if recoverable as a matter of law." *J. Marymount, Inc. v. Bayer Healthcare, LLC*, No. C 09-03110 JSW, 2009 WL 4510126, at *2 (N.D. Cal. Nov. 30, 2009) (cleaned up). Where "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013) (cleaned up).

When the plaintiff does not dispute the amount in controversy, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). But if the plaintiff contests the amount in controversy, then "[e]vidence establishing the amount is required," and "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. at 87–89 (no need for proof in the notice of removal, which was the only issue before the Court). "The parties may

submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (cleaned up).

Sentinel's burden is to show more than $75,000, inclusive of fees and costs.

A preliminary issue is the level of proof Sentinel needs to meet its burden: it says that it does not need to submit evidence because Digital makes only a facial challenge.[21] Digital counters that *Dart Cherokee* rejected this argument: a plaintiff need not introduce evidence about the amount in controversy to put Sentinel to its burden.[22] A defendant's notice of removal needs only to have plausible allegations of jurisdictional elements. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020). This issue here is whether the allegations of damages are plausible. Given the plaintiff's challenge to its allegations in the notice of removal, Sentinel provided additional evidence and information in its opposition to support its jurisdictional allegations.

There is undisputedly at least $59,404.62 in controversy, leaving an additional $15,595.39 to reach $75,000.01. Sentinel contends that there are two grounds to plausibly reach this number: damages attributable to the bad-faith claim and punitive damages.[23]

**1. Damages for Bad-Faith Claim — Attorney's Fees**

A plaintiff can recover reasonable attorney's fees that would not have been incurred but for the defendant insurer's tortious conduct or bad faith. *Brandt v. Super. Ct.*, 37 Cal. 3d 813, 817 (1985) (cleaned up) ("When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. . . . What we consider here is attorney's fees that are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action."). Only attorney's fees incurred in obtaining benefits under the insurance

---

[21] Opp'n – ECF No. 12 at 4.
[22] Reply – ECF No.13 at 2.
[23] Opp'n – ECF No. 12 at 6–10.

contract are recoverable, and "fees attributable to obtaining any portion of the plaintiff's award which exceeds the amount due under the policy are not recoverable." *Id.* at 816–19 (cleaned up).

Attorney's fees recoverable under *Brandt* count toward establishing the amount in controversy. *Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1199 (N.D. Cal. 1998) ("Since the amount in controversy may include attorney's fees if recoverable by statute or contract, attorney's fees recoverable under *Brandt* may be considered in determining whether the amount in controversy exceeds the jurisdictional floor.").

In calculating attorney's fees for purposes of determining the amount in controversy, courts require "the removing defendant to make a reasonably specific showing as to why the projected fee award is appropriate." *Sley v. USAA Cas. Ins. Co.*, No. 5:16-cv-04882-HRL, 2017 WL 2114773, at *3 (N.D. Cal. May 16, 2017). The calculation must be "reasonable, conservative, and based upon evidence," which can include "a survey of relevant decisions from other courts." *Id.* (cleaned up). "[W]hen a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

Sentinel points to the plaintiff's claim for damages for the breach of the implied covenant of good faith and fair dealing: attorney's fees, inability to replace equipment, and the resulting loss of work and income.[24] It then estimates attorney's fees. Public-record billing practices of the plaintiff's law firm, a "well-regarded policyholder firm," show billing rates of $900 an hour for lead counsel and $450 an hour for associates. Sentinel's fees calculation (based on its declarant's forty-plus years litigating insurance bad-faith disputes) has conservative estimates of the time that will be spent by partners and associates, totaling $41,400 through summary judgment. It applies a fifty-percent discount to eliminate the fees that are not recoverable. Half of $41,400 is $20,700, which is an amount in controversy of $80,104.62 (based on the undisputed $59,404.62).[25]

---

[24] *Id.* at 4–5 (citing FAC, Ex. 2 to Notice of Removal – ECF No. 1-2 at 5 (¶ 15)).
[25] *Id.* at 6.

The plaintiff counters that fees calculations are speculative for four reasons: (1) Sentinel has not asked for discovery of the plaintiff's fee agreement; (2) attorney's fees are recoverable only for an attorney's work to recover contract benefits (and not for work to obtain extra-contractual damages); (3) the fees estimate is not tied to any "specific factors" tied to this case (such as the factor that summary-judgment motions often are brought only for claims of bad faith and punitive damages, not for breach of contract); and (4) Sentinel has not cited relevant fee awards in other cases.[26]

One, as to the lack of discovery of the actual fee arrangement, fee agreements define the plaintiff's and counsel's respective agreements and risks. That seemingly is a different issue than the recovery of fees as damages for a failure to pay contract benefits. Then, the issue is the reasonableness of the assumptions here. The hourly rates are based on counsel's actual rates six years ago. The estimates of hours reasonably expended are based on the defense declarant's substantial experience litigating similar cases. The plaintiff does not dispute the reasonableness of the hourly rates or the time expended (and instead, as discussed in the next section, challenges the allocation of hours between contract benefits and extra-contractual recovery). The estimated hours are conservative and based on reasonably specific assumptions.

Two, turning to the reasonableness of the fees by category, enough fees are necessary for recovery of contract benefits to meet the amount-in-controversy requirement.

For example, four hours for drafting the actual initial correspondence with Sentinel ($3,600) is a "reasonably specific showing," even without the fee arrangement, of a recoverable fee necessarily addressed to the recovery of contractual policy limits. *See Sley*, 2017 WL 2114773, at *2–3 (fees up to the point of removal are recoverable); *Sasser v. Allstate Ins. Co.*, No. C 08-3793 SI, 2008 WL 4532562, at *3 (N.D. Cal. Oct. 8, 2008) (same). A fifty-percent discount is reasonable, given the nature of the claims process. Similarly, the fifty-percent discount that Sentinel applies is a reasonably specific tethering of the tasks for the initial work to recovery of policy limits (as opposed to extra-contractual damages). The court has the complaint, the motion to remand, and the reply, and it held the hearing on the motion, which provides a record for this conclusion. Moving

---

[26] Reply – ECF No. 13 at 6–8.

the case forward also is equally necessary to recover contract benefits, including participating in the Rule 26 conference, drafting the case-management statement, appearing at the case-management conference, drafting the initial disclosures, and producing documents. These are routine tasks that are not complicated. Applying the fifty-percent discount results in a reasonably specific showing of the fees likely incurred.

The fees for these steps are $13,950. Discounted by fifty percent, they are $6,975, leaving $8,620.39 needed to reach the amount in controversy.

The next categories are depositions and summary judgment. The plaintiff's only challenge is to summary judgment: it says that sixteen hours is excessive because time spent for this work often is not recoverable because motions for summary judgment typically are brought only for claims for bad faith and punitive damages, not breach of contract.[27] But even taking the fees for summary judgment entirely off the table, and discounting fees for depositions by fifty percent (again a reasonably specific approach given the nature of the litigation), that yields $9,000, satisfying the amount in controversy.

The plaintiff also contends that Sentinel did not cite fee awards in other cases.[28] The defendant's showing about an appropriate award can include a survey of other decisions. *Sley*, 2017 WL 2114773, at *3. There are cases with surveys. *Freeman v. Canseco Servs. LLC*, No. C06-06019 MJJ, 2006 WL 8443468, at *3 (N.D. Cal. Dec. 5, 2006) (collecting jury verdicts that resulted in fee awards, including (1) a 2005 award of $91,000 in *Brandt* fees for a claim for $47,962 in compensatory damages under the policy and (2) a 1994 award of $28,199 in *Brandt* fees for a claim of $46,642 in compensatory damages). The showing here is sufficient, even without citation to other fee awards, because it is a conservative estimate based on the counsel's own rates with a discount reflecting an appropriate allocation — under the circumstances of this case — to *Brandt* fees.

---

[27] *Id.* at 7.

[28] *Id.* at 7–8.

The plaintiff cites cases where courts have dismissed valuations of attorney's fees as speculative and based on unsupported assumptions.[29] The cases do not change the outcome: the fee estimates there were proportionately larger than those here and were untethered to reasonable hourly rates and approximations of the work needed for *Brandt* fees.

*Elias v. Integon Preferred Insurance Co.* was a case involving an insurance company's bad-faith refusal to pay uninsured motorist benefits. No. 2:24-cv-01981-WLH-RAOx, 2024 WL 2732228, at *1 (C.D. Cal. May 28, 2024). The complaint did not specify damages. The estimated fees there were $71,700 (for work through a seven-day trial) based on counsel's "experience and specific factors" in this case. The court dismissed this as speculative because counsel did not explain what specific factors led him to make the estimates. *Id.* at *2. By contrast, here, there is undisputedly $59,404.62 in controversy, leaving only $15,595.39 in fees to establish the amount in controversy. The fees are calculated only to summary judgment. *Cf. Sasser*, 2008 WL 4532562, at *4 (characterizing estimate based on a four-day trial as "excessive"). The estimates here are based on counsel's actual rates (albeit six years ago, further suggesting their reasonableness). There are conservative hourly estimates by task that the plaintiff has not challenged. And there is a fifty/fifty allocation of the fees between contract benefits and extra-contractual recovery, an allocation that the plaintiff contests specifically only with an argument that fees for summary judgment often are not recoverable, an argument that the court credited fully by eliminating the fees for these tasks.

*Gonzalez v. General Insurance Co. of America* involved an insurer's failure to pay policy benefits when a barn on the plaintiff's property burned down. No. 1:18-cv-01531-DAD-BAM, 2019 WL 698057, at *1 (E.D. Cal. Feb. 20, 2019). The plaintiff's claim was approximately $82,000, but about one month before removal, the defendant insurer paid her $60,817.14, reducing the policy-limit claim to about $21,000. *Id.* at *2. The defendant contended that through trial, the plaintiff would spend more than $75,000, more than the roughly $54,000 needed to satisfy the amount in controversy. *Id.* It predicated this on (1) the drafting counsel's representation that he billed $500 an hour and estimated ten hours of work on the motion to remand (for a total of $5,000), (2) the drafter

---

[29] *Id.* at 6.

was not lead counsel, and it was reasonable to think that other billers would bill more, and (3) assuming 500 hours to trial, fees would be $250,000. Discounting by seventy percent (to $75,000) met the amount in controversy. *Id.* The plaintiff contended that this was "pure speculation," both about the billing rate and the hours attributable to the collection of policy benefits. The court agreed: there was nothing supporting the reasonableness of the billing rate or the hours spent. *Id.* at *3. Again, this case is different: only a small amount of fees is needed to reach the amount in controversy. The plaintiff primarily challenges the allocation between policy-limits claims and extra-contractual claims. As discussed above, the proxies applied here are reasonable.

Other cases in this district support this conclusion. In *Smith-Dickerson v. State Farm Mutual Auto Insurance. Co.*, the insured's car was stolen and recovered, but with significant damage. No. 18-cv-00189-EMC, 2018 WL 2193133, at *1 (N.D. Cal. May 14, 2018). Compensatory damages for the replacement value of the car "could be as much as $45,000." *Id.* at *3. The defendant insurer estimated that attorney's fees would be at least $20,000 to $30,000 because hourly rates were at least $200 to $300 at the low end and it would require at least one-hundred hours to take the case through summary judgment. *Id.* at *4. Here, the estimated hours through summary judgment are sixty and the hourly rate is not disputed. Under *Smith-Dickerson*, the estimates here support the conclusion that Sentinel has met its burden of proving by a preponderance of the evidence that the amount in controversy has been met. *Id.* (also relying on punitive damages — based on allegations that the insurer misrepresented the cause of damages to avoid paying contract claims — to support the amount in controversy); *cf. Conrad Assocs.*, 94 F. Supp. at 1200 (no support for estimate of eighty hours needed to get to summary judgment; no allocation of hours to *Brandt* fees; no support for application of counsel's billing rate to every hour billed in the litigation).

In sum, the policy limit and the *Brandt* attorney's fees meet the amount in controversy.

### 2. Punitive Damages

A plaintiff can recover punitive damages for insurance bad-faith claims, and those damages are included in calculating the jurisdictional amount in controversy. *Sley*, 2017 WL 2114773, at *3 ("To establish probable punitive damages, a defendant may introduce evidence of jury verdicts in

ORDER – No. 24-cv-06234-LB    11

cases involving analogous facts."). The court's inquiry is whether "there are allegations in the complaint that would reasonably support a claim of oppression, fraud, or malice, not just a standard denial of an insurance claim under the contract." *Smith-Dickerson*, 2018 WL 2193133, at *4 (cleaned up). On this record, the plaintiff's allegations meet this standard.

Sentinel provided some comparators with the following ratios: 3.33:1, 3.99:1, and 5:57:1.[30] It points out that a ratio of 0.26:1 would meet the amount-in- controversy requirement. It acknowledges that awards are "asked for quite frequently, but awarded less frequently."[31] Sentinel's three cases are as follows.[32]

*Mazik* (ratio 3.33:1), a 2016 case, involved a motorist who made a claim for injuries suffered in a head-on collision with an uninsured motorist. Geico admitted coverage under a policy with a limit of $100,000, with an entitlement to $50,000 in underinsured motorist benefits but disputed the extent of the injuries (a fracture with severe soft-tissue swelling). The uninsured driver settled with the plaintiff for $50,000, and an arbitrator awarded the plaintiff $50,000 against Geico. The total compensatory award for pain and suffering was $300,000, and the punitive damages award was $4 million. Verdict & Settlement Summ., 2016 WL 5873376 (Cal. Super. Ct. Aug. 4, 2016).[33]

*Borjon* (ratio 3.99:1) involved a car dealership destroyed by a fire. The jury award was (1) $1,412,311 in contract damages, reduced by an offset to $1,269,726.14, and (2) for breach of the covenant of good faith and fair dealing, an additional $152,750 plus punitive damages in the amount of $6,240,000. 2023 WL 3734982, at *1.

*Victaulic* (ratio 5:57:1) involved pipe-coupling systems for industrial, commercial, and institutional uses (heating, air conditioning, and mining, among other uses). 80 Cal. App. 5th at 491–92.

Digital counters that Sentinel has not carried its burden because it cites only one property case

---

[30] *See* Statement.

[31] Opp'n – ECF No. 12 at 8 (emphasis omitted).

[32] *See* Statement (full case names and some context).

[33] Verdict & Settlement Summ., Ex. 6 to Downs Decl. – ECF No. 12-7; Def's Suppl. Br. – ECF No. 20 at 1.

and makes no effort to analogize the facts there to the case here.[34] It cites three cases to support the conclusion that Sentinel's failure to cite analogous cases means that its allegation of punitive damages does not satisfy the amount-in-controversy requirement.[35] In *Elias*, the uninsured-motorist case discussed above, the defendant offered a stolen-car case where the jury awarded $100,000 after the defendant insurer denied the insured's claim as fraudulent. The *Elias* court held that the comparator was not analogous because the *Elias* insurer paid the claim. 2024 WL 2732228, at *3. In *Reyes v. Staples the Office Superstore, LLC*, a wrongful-termination case, the court distinguished two employment-discrimination cases on the ground that they established only that punitive damages could be recoverable but were not factually analogous. No. CV 19-07086-CJC (SKx), 2019 WL 4187847, at *4 (C.D. Cal. Sept. 3, 2019). In *Hill v. Avis Budget Car Rental Car, LLC*, the court held that the mere possibility of punitive damages was not sufficient to prove the amount in controversy. No. CV 14–1350 FMO (MANx), 2014 WL 1325556, at *3 (C.D. Cal. Apr. 2, 2014).

Digital is right: Sentinel does not analyze the three comps and instead cites them only to show the potential for punitive damages. That said, the possibility of punitive damages at least supports the court's earlier determination that Sentinel has established the amount in controversy. In *Smith-Dickerson*, the court considered "whether there were allegations in the complaint that would reasonably support a claim of oppression, fraud, or malice, not just the standard denial of an insurance claim under the contract." 2018 WL 2193133, at *4 (cleaned up). It concluded that because the plaintiff alleged that the insurer "misrepresented the cause of the damages to the car to avoid providing covered claims under the policy, advised her not to obtain the services of an attorney, and suspended coverage in retaliation for [her] asserting her legal rights . . . , there is a reasonable basis for punitive damages." *Id.* (cleaned up). Thus, it held that the punitive damages and the attorney's fees in combination could make up the gap between the value of the car and the $75,000 threshold. *Id.* (did not quantify punitive damages). Here, as in *Smith-Dickerson*, there are allegations that support a claim of oppression, fraud, or malice, not just the standard denial of the

---

[34] Reply – ECF No. 13 at 8–9.

[35] *Id.* (addressing the three cases in this paragraph).

claim under the contract: the insurer allegedly misrepresented damages to avoid paying contract claims by using the wrong metrics to calculate replacement value, depreciating the equipment, delaying in its response, refusing to investigate the claim, and disparaging Digital. *See id.* That at least is relevant to the determination that the amount in controversy is satisfied and supports the conclusion that the fifty-fifty allocation between contract-recovery and extra-contractual claims is a reasonable assumption that supports the conclusion that Sentinel has proven the amount in controversy by a preponderance of the evidence. *See id.*

## CONCLUSION

The court denies the motion to remand. This disposes of ECF No. 11.

**IT IS SO ORDERED.**

Dated: December 10, 2024

_____
LAUREL BEELER
United States Magistrate Judge